Harold A. Stevens, J.
Plaintiff seeks a declaratory judgment to determine if it has a contract with Local 816, I. B. T. It asserts that a justiciable controversy exists by reason of a question of interpretation of a contractual provision and the consequences attendant upon any determination thereof. Locals 816 and 707, parties defendant, cross-move for summary judgment in favor of each as against the other, and the plaintiff, while defendant Local 816 asks also, if its motion be denied, to be permitted to go to trial. It might be well to review the position of plaintiff and the two locals. Joint Council No. 16 moves for dismissal as against it.
Since 1953, Local 707 has had a labor agreement with plaintiff covering over-the-road operations. For a number of years Local 707 had a collective bargaining agreement with a corporation known as Mid-States Freight Lines, Inc., located in New York *503 City. This agreement covered both local and over-the-road operations. On or about April 1,1957, plaintiff purchased Mid-States and assumed its contractual obligations with Local 707, which now asserts that it is entitled to handle all local pickup and delivery service performed by plaintiff in the metropolitan area, by reason of a provision of the contract.
The plaintiff, a Missouri corporation, is a motor carrier engaged in the transportation of general commodities in interstate commerce. Some of its operations constitute terminal to terminal operations. In some cities the local pickup and delivery is carried out by so-called “ city ” trucks operated by plaintiff’s employees or by the over-the-road vehicle itself. In other cities local cartage agents are employed to make local deliveries.
In New York City plaintiff asserts that it carries on both types of operations. At its Union Truck Terminal in Manhattan its own vehicles, operated by its employees, effect local delivery of out-of-State merchandise, and pick up merchandise destined for out-of-State delivery.
It is the other operation from which the present controversy stemmed directly.
At Maspeth, Long Island, plaintiff has rented a terminal facility since 1948. It is from that facility that local pickup and delivery operations are carried out also. Plaintiff asserts that it employs a cartage agent, Dispatch Express N. Y. Corp. (herein called “Dispatch”), a New York corporation, to do this work.
Local 816, for the past five years, has had a collective bargaining agreement covering operations at the Maspeth terminal. The signatories to the agreement are Local 816 and Dispatch. Local 816 contends that Dispatch was really the agent for plaintiff and plaintiff is the real party, as principal, with whom the agreement was entered.
Plaintiff asserts that Dispatch was merely its cartage agent, that Dispatch and Local 816 made an agreement, to which it was not a party and by which it cannot be affected.
The issue assumes importance because prior to April 1, 1957, Dispatch performed all of plaintiff’s local cartage work, while, since that date plaintiff has operated its terminal facility at the Union Truck Terminal. On June 9, 1957, plaintiff notified Dispatch that it elected to terminate its agreement as of June 23, 1957,— a date subsequently extended by agreement, while this matter is pending, to September 20, 1957. Plaintiff intends to take over and merge its operations. Local 707 claims jurisdiction over the entire operation at Union and *504 Maspeth, while Local 816 claims the contract executed March 21, 1957, signed by Dispatch and Local 816, covering the period from September 1, 1956 to August 31, 1958, binds the plaintiff for the metropolitan area.
A prior contract to which Dispatch and Local 816 were signatories expired in September, 1956. Negotiations for a new contract began in August, 1956, and on August 28, 1956, plaintiff sent a letter to Local 816, which stated that retroactive wage increase payments would be made by Dispatch, and “in the event they fail to do so, plaintiff will arrange to take care of this and will handle the same with Dispatch Express ”. The letter, a copy of which was sent to the president of Dispatch, stated that authority had been given to such president to sign in our behalf as they “ are our Cartage Agents for this area.”
Local 816 contends that the men, members of the local, who were employed, were hired and fired by personnel of plaintiff, that awards were bestowed by plaintiff, that the men were paid by plaintiff, that all of the trucks and the terminal building bore the name of the plaintiff, and that Dispatch were merely an agent of plaintiff. Papers and documents which allegedly support this view are attached to the moving papers. Local 816 asserts also that the men regarded plaintiff as their employer and that workmen’s compensation came from plaintiff.
The plaintiff asserts that it was never a party to any labor agreement with Local 816, and that in November, 1953, it executed an agreement with Dispatch whereby Dispatch agreed to perform all of plaintiff’s local cartage work. That because of Dispatch’s financial difficulties plaintiff modified the agreement in November, 1954, and that, while its personnel and trucks are used by Dispatch, the stockholders of the Dispatch corporation are unrelated to those of plaintiff.
It disputes the charge that plaintiff paid the men’s salaries, of those employed regularly, but admits payment for casual labor 'for which plaintiff says it was reimbursed by Dispatch. Checks are attached showing payment by Dispatch to named persons, as well as copies of unemployment insurance contributions, Federal and State, by Dispatch for its employees. Plaintiff asserts also that Dispatch carried its own workmen’s compensation.
It should be pointed out that the original agreement of 1953, between plaintiff and Dispatch, was for five years, and provided for arbitration of disputes, as well as termination of the agreement upon 30 days’ notice. Checks for payments of wages, however, were until recently signed by an officer or employee of plaintiff though drawn on the bank account of Dispatch.
*505 A corporate entity, in the absence of limitations by statute or otherwise, may enter a collective bargaining agreement. And the plain language of the contract, in the absence of ambiguity, will prevail. The language, where doubt exists as to its meaning or the interpretation to be given it will be construed most strongly against the person using it,— in this case Local 816. Dispatch could enter a valid agreement as a proper party.
The mental approach of employees, that is, their professed belief that the plaintiff was their employer, is not sufficient to effect a merger of identities where the corporate entities are separate and distinct and each apparently assumed its appropriate responsibility under Federal and State requirements.
The assumption of the obligation by plaintiff as a guarantor of payment of retroactive wage increases did not effect a complete transposition of responsibility so as to make plaintiff a primary obligor beyond the extent of the liability expressly assumed, or such as is impliedly necessary to give effect to the obligation.
Obviously, plaintiff was not a signatory to the agreement executed by Dispatch and Local 816. Unless Dispatch were in fact the agent of plaintiff acting in accordance with power conferred, plaintiff could not be bound by the agreement. Upon all of the papers before us we cannot determine that question and feel that it can only be resolved upon a trial of that issue where testimony may be taken and further inquiry made. Or the parties may utilize any existing machinery to resolve that question. In the absence of proof of agency, we find nothing to bind plaintiff to Local 816, though it would on the documents before us be bound to Local 707. It might have aided us to know when Dispatch was incorporated and the circumstances under which it began its employment with plaintiff.
For the reasons above stated, the motion and cross motions of the parties are denied.
The above decision in this case dated September 16, 1957 is recalled and republished with the following addition:
Because of the circumstances here it is desirable that an early adjudication be had. The case is directed to be placed near the head of the Trial Calendar for the 9th day of October, 1957, upon the filing of a note of issue and payment of proper fees. The statement of readiness is dispensed with.
Order entered.